Good afternoon, Your Honors. May it please the Court, my name is Rosie Cho, and I'm here on behalf of the petitioner, Ms. Violetta Circu, and I would like to reserve a couple of minutes for rebuttal. Your Honor, the issue is pretty straightforward in this matter. The immigration judge below denied Ms. Circu her right to a fair and full hearing when she took administrative notice of evidence that was never presented, never submitted into the record, and that was the 1999 State Department's country report for Romania. Well, now, didn't Ms. Circu respond to it in her BIA brief? Didn't she specifically refer to it? Your Honor, we did. In Ms. Circu's appeal to the Board, she stated that she would like the judge aired by taking administrative notice of a document that was never made part of the record without giving her an opportunity to respond to that document. And could she present evidence at the BIA level? Your Honor, we argued in the appeal that the I.J. aired and that the correct remedy. Why don't you start with my question, which is, can a petitioner present evidence? Let's suppose that your client had evidence, affidavits, declarations, newspaper clippings, whatever, which countered what was relied upon in the country report. Your Honor, it's our view. Could you present that at the BIA? Yes. Your Honor, it's our position that the Board is not the appropriate body to submit new evidence. The answer is no, isn't it? The answer is no, Your Honor, because as this Court has recognized as recently as 2003, there is no procedure by which an appellant may submit new evidence to the Board of Immigration Appeals. There have been times when the Board, under exceptional circumstances, has agreed to accept new evidence. But often they have said, we are an appellate body. We do not accept new evidence. It's not the appropriate forum to present new evidence. And did your client ask for a remand to the I.J. to present that evidence? We did, Your Honor. We asked that the immigration judge's decision be overturned, or in the alternative at the very least, that it be remanded so that she is given that opportunity to rebut the evidence that was taken administrative notice of. Further, Your Honor, the immigration judge below attributed the 1999 country report, which was never submitted by the government, as submitted by the government, and she attributed the government of having met its burden of overcoming the presumption that Ms. Serkiu had a well-founded fear of persecution. The judge clearly found that Ms. Serkiu was a credible witness, an applicant, and had suffered past persecution, right up to the point of her departure, which was in 1994. Have you put anything in the record to show what evidence she would bring forth if it were remanded to the immigration judge? Your Honor, we argued for an opportunity to respond. We certainly would have welcomed an opportunity for Ms. Serkiu to discuss her ongoing  The 1999 document that the immigration judge relied on does not in any way contradict what Ms. Serkiu testified to credibly before the immigration judge. So you just make a legal argument if it were remanded to the immigration judge? Yes, Your Honor. Basically, then? Yes, Your Honor. How would that differ from what you're saying today or what you could have said before the BIA? Your Honor, Ms. Serkiu never had noticed that the immigration judge would take notice of the 1999 country report. Had she had such notice, she certainly would have responded that there have been no changes in the – since her departure in 1994 that sufficiently overcame her fear. And would she – or would she – if she had been given a remand, would she or would she not have presented evidence? Certainly, Your Honor. Well, that's a little different than your response to Judge Seiler's question. Here's his question, which is if it's important to him and it's also important to me, it's two people who think it's important. That's pretty good math at this level. Make it three. So let's focus right on that, okay? We understand the rules of the game at the BIA are you can't present evidence, bring in witnesses, throw in documents, that sort of thing. You asked for a remand. If you were given a remand, what evidence would have been presented in what form? Witnesses, exhibits, what would it have been? And would it have been anything different than what you argued in your briefs to the BIA? Your Honor, we would have presented not just Ms. Surkiu's oral testimony. We certainly would have countered with numerous articles, documentation to rebut whatever the judge found was adequate in the 1999 country report. We certainly also would have looked for expert testimony. Wait a minute. Didn't I just hear you say that the country report did not contradict anything that was in the record? Your Honor, the immigration judge specifically cited the 1999 country report and specifically stated the government, quote, the government generally does not impede the observance of religious belief. That is not sufficient to find that the persecution that Ms. Surkiu suffered right up until 1994 overcame that presumption. Yeah, but it's your duty to offer some sort of a showing that country report is inaccurate and we don't see that showing, do we? Well, we would like that opportunity to make that showing. But have you made an offer when you filed with the BIA? Did you indicate if you had the opportunity, this is what I'd like to be able to put into the record? I believe in our appeal to the BIA, Your Honor, we stated that we would like that opportunity and we would present oral testimony and further documentation. Yeah, but what testimony? What is the evidence that you think would defeat the statement that's made in that country report? Your Honor, Ms. Surkiu suffered until 1994 when she fled the country. That in and of itself we believe alone would suffice. But additionally, we would like the opportunity to ask Ms. Surkiu, in the country report in 1999, it says that there's been a general improvement. How would you respond to that? We also believe that one document, one State Department document that says that there is a general improvement and which specifically doesn't address how Pentecostals are specifically treated in this country is insufficient to show that she no longer has a well-founded fear of future persecution. Your Honor, I'd also like to point out certain errors in the immigration judge's decision. She specifically stated in her opinion, in her decision, that Ms. Surkiu suffered until 1994. Then she continually and repeatedly goes back to the fact that the ‑‑ there was a change in the government in 1989, that it was no longer a communist regime and there was a change in the government. That contradicts her very finding that up until 1994, Ms. Surkiu suffered past persecution. In fact, some of the most egregious forms of persecution that she suffered, she incurred in 1990. She continued to receive summons from the police captain who sexually assaulted her right up until 1994. In fact, three times after she left the country, she learned that there were further summons for her to appear before this captain. So that is one error. Another error is that there was no individualized analysis on the part of the immigration judge, even if the 1999 country report was properly taken notice of. The judge failed to indicate how a general improvement in religious freedom would affect Ms. Surkiu, who was specifically targeted by a police officer, a police captain, who insisted that she come in, who sexually assaulted her, who detained her without charges. Further, the judge erred in shifting the burden on to the petitioner to show that she still has an ongoing well-founded fear of future persecution, when clearly that is the burden of the government to overcome that. Did the immigration judge find that the sexual assault was because of her religious beliefs? Your Honor, the judge found that she was – I believe the judge found that the – that Ms. Surkiu suffered that because she was a Pentecostal and, in addition, because of imputed political opinion, because she was found during the minor strikes in 1987. In its – You're down to 33 minutes – seconds, rather. Oh, okay. I'd like to reserve some time. You can use them now. Thank you. Ms. Kessler, you're up first. May it please the Court, my name is Elizabeth Kessler. I'm with the Department of Justice. I thought I would cover two points today and then rest on our brief with respect to the remaining points, unless you have any questions. The two points I will cover are, first, that under the particular circumstances of this case, it was not a due process violation for the immigration judge to take administrative notice of a more recent State Department country condition report that had been introduced at the hearing, and where Petitioner had the opportunity in her brief to the Board to raise issues with respect to that report. Let me ask you about both of those. Of course. Was there a two-year delay between the close of evidence and the consideration of this document? That's right. There was roughly a two-year delay. The answer is yes, isn't it? It was roughly, yes. Roughly two years. The hearings took place in 1998. The immigration judge wanted to consider it. I mean, what she stated on the record is that she wanted to consider the evidence in more detail before she issued her decision. She wasn't prepared to issue an oral decision. Her decision came out in August 2000, and what obviously took place is that she looked at the intervening State Department report and then cited to that. I think we basically know the contours of what happened. That's exactly right. That was why there was that two-year delay. Your opponent argued that under the ordinary processes of the BIA, a Petitioner cannot present evidence. They can argue, they can cite to the record, but they can't present evidence, correct? We would agree with that as a general matter. I mean, some of the case law from this circuit sort of describes the Board's policy as sort of schizophrenic, and sometimes they seem to take evidence, and sometimes they refer to it being in exceptional circumstances. And I think she had properly argued for either a remand, you know, or for the Board to let her introduce more evidence. So I think the ordinary and consistently applied rules of the BIA, her opportunity to rebut that document would have been a remanded hearing before the IJ, correct? I think that's correct. I think that's what we would have expected to happen in this case if the Board was interested, you know, in hearing more evidence. The flip side of that, are you aware of any case, BIA, Ninth Circuit or otherwise, that requires a Petitioner to actually describe the evidence that would be presented to rebut a document relied upon by the IJ but not introduced at the hearing? I'm not aware of anything that would require her. I think it would have been, you know, helpful to the Board, and I thought the brief was good at pointing out sort of the issues. Well, why isn't it a per se violation of due process to decide a case on evidence that was not made available timely to the petition? Well, under this Court's precedent, certainly in the immigration context, I mean, a due process violation is looked at sort of under the circumstances and under the entire circumstances. And I think in this case, we believe that the fact that there is a direct appeal to the Board available after the immigration judge's decision was issued is really key. And this case is very different from probably what are the sort of two most important cases that Petitioner cites from this circuit, the Getachew case and Castillon-Belagro, which involved the Board taking administrative notice of changed country conditions that happened after the immigration judge had issued. Why doesn't Getachew apply? Because in that case, and very similar to Castillon-Belagro, one of the Nicaraguan case that was sort of from the Ninth Circuit, I think there are two important differences. One is that in both of those cases, it was the Board that took administrative notice, not the immigration judge. And this Court has found that both the fact that whether or not it was argued on the brief before the Board or that there was a possibility of a motion to reopen. Let's suppose that two years after the close of evidence but before the I.J. reaches a conclusion, the I.J. receives a letter that says, you know, this person's really not a Pentecostal. They're a member of the Communist Party before the fall of the Soviet Union, and there was no sexual assault. As a matter of fact, she was having an affair with this police officer. Could the I.J. rely upon that without reopening the hearing to determine adverse credibility? I think that's the answer to my question, no. In big, bold letters, no. I think that's a no, but it's a very different circumstance from this case. Tell us how this is different. And this is a different circumstance because at the hearing in this case, the changed country conditions in Romania were an issue, and evidence was presented on that issue, and Petitioner had the opportunity and the immigration judge considered whether or not Romania had changed. In 1989, there was evidence there was a further change of country. Now, this was before the I.J.? Before the immigration judge. That is correct. That's, I think, a very important factor in this case. So the issues were all before the immigration judge. The State Department's 1997 report on country conditions was introduced into evidence, and the sentence on the fact that religious freedom is generally improved, that exact sentence that the I.J. cites from the 1999 report appears in the 1997 report. And the 1997 report was in the record. Was in the record. That's correct. There's nothing different between the 1997 and 1999 report with respect to this religious issue? There's nothing significant, and I certainly encourage the Court to look at the two reports because I do think it matters in terms of, you know, looking at whether or not she had a full and fair opportunity on the whole to raise her issues concerning changed circumstances, and also she had the opportunity before the board to raise, you know, whether or not there were differences between 1997 and 1999 that mattered. Could the immigration judge have reopened the proceedings to allow the petitioner to respond to the later report? Before she issued her decision, I don't see any reason why she couldn't have. Well, let's say, for instance, if the petitioner had real good evidence to contradict the country's study, but the BIA ruled against her, would she have any recourse under your theory here? I mean, they've looked at it and said, we're not convinced, and therefore we affirm. I guess the issue then on the court is that what they have is all false, isn't it? Well, and then I guess the issue for this Court would be probably whether or not the board abused its discretion in determining that, you know, the particular evidence wasn't, you know, she wasn't given an opportunity to present. How would she do it because you say she can't induce any evidence before the board? Well, as I said, I think, and as this Court has recognized, the board has been somewhat schizophrenic, so I'm not really sure what the board would have done if she had attached evidence and said, you know, please consider these. My feeling is it probably would have gotten remanded if the court felt like there were further evidentiary issues to be heard. But the board doesn't have several members, so you might get, it's like the circuit that's got. Yeah, that's exactly right. It has several members, and under the streamlined procedures, which this Court is aware of and, you know, has now held don't violate due process, right, it can be just one. This was streamlined, wasn't it? Yes, and this was a streamlined. One judge in your opinion. Yeah, that's exactly right. The other point I had just wanted to cover briefly was that in this case, the immigration judge's decision was supported by substantial evidence, even putting aside the due process, due process concerns, and that is a deferential standard of review under which this Court can only reverse if the evidence in the record compels a contrary conclusion. And in this case, the immigration judge relied on a number of pieces of evidence, not simply the 1999 State Department report to find that country conditions had in fact changed such that the petitioner no longer had a well-founded fear of future persecution. The immigration judge noted that the communist regime had ended in 1989. There was evidence that there was a further change of government in 1996. There were a number of human rights reports, including the State Department report from 1997 introduced in evidence. There was also petitioner's testimony on sort of the timing of, you know, of her own instances of past persecution. What you're saying is that there was no reason to rely on the 99 report. The 97 report covered all of the points you've just made. I think that's exactly right. I think it's a case of an immigration judge citing to the most recent, you know, version of a report that's, you know, that's out there. And only one other point I had just wanted to correct from petitioners. I think although Ms. Sertiu had left Romania in 1994, the immigration judge throughout her decision talks about finding past persecution on the basis of religion based on the conduct that happened during the communist regime. So she didn't differentiate to sort of say there was religious persecution up to 94 and then it ended. So the government would sort of put that more at 89. And then I think the judge discussed in an individualized manner the situations in the 90s. Have you read both reports? Yes, on the religious persecution section and then other sections. Can you tell us off the top of your head who was the head of the Communist Party in Bulgaria before 1989? Before 1989? Ceaușescu. Okay. And he was assassinated before 1989, right? In 1989, yes. And then the ‑‑ This place. And I don't know if I have the pronunciation. Iliescu? Iliescu? I'm not sure. Also a member of the Communist Party. That's exactly right, even though it wasn't. And who was the president of Bulgaria after 1989? Oh, I'm not sure of that. The same person, wasn't it? In 96, there was a change in 96. But in 94? In 94, no, so that it would have been the same person. But on that particular point, the IJ did not discuss sort of in her opinion, you know, post‑1989. There was evidence at the hearing and sort of discussion made of it. My questions took over your time. Okay. I'm sorry about that. Okay. Counsel, your time has expired.  Thank you very much. Thank you very much. Ms. Cho, you have about a half a minute left. Would you comment on that issue that we've been talking about, in other words, that there's no difference, no relevant difference between the 99 report, which was not in the record, and the 97 report, which was? Yes, Your Honor. I think, Your Honor, that further points to the IJ's error. The IJ said, based on the record, and that includes the 1997 country report, I find there's been persecution. And but for ‑‑ she only cites the 1999 country report to find that the government rebutted the presumption of future persecution. Now I'm confused about your argument. If your whole argument is that we should reverse and remand because you didn't have a chance to take a crack at the 99 country report, is that consistent with what you just said? Well, Your Honor, the judge's decision is confusing. She is saying that the ‑‑ based on the record, in front of her, she finds persecution. Okay. Then she cites two isolated sentences in the 1999 country report to find that there's been a change. My question to you was, is there any relevant difference between the 99 report, which was not in the record, and the 97 report, which she relied on from the record? Your Honor, I do believe there is some change in language from 1997 to 99. What are you relying on? What change are you specifically relying on? Just in ‑‑ she ‑‑ I believe in the 1999 country report, it talks about the number of religious organizations that still continue to not be allowed to build churches and to have meetings, et cetera. And I think that number changed. There were some other minor changes about the different types of specific religions that were cited as not ‑‑ as suffering, as not being able to open churches. But does it specifically refer to Pentecostals? The 1999 country report does not specifically refer to Pentecostals, and neither does the 1997 report. Okay.  The case just argued will be ‑‑
judges: O'scannlain,siler , Hawkins